Jill J. Parker (Cal. State Bar No. 274230)
jill@parkerminne.com
**PARKER & MINNE, LLP**
700 S. Flower Street, Suite 1000
Los Angeles, California 90017
Tel.: (310) 882-6833 Fax: (310) 889-0822

**MASON LLP**
Danielle Perry, Esquire
(SBN 292120)
dperry@masonllp.com
5335 Wisconsin Avenue, N.W., Suite 640
Washington, D.C. 20015
Tel. (202) 429-2290

*Counsel for Plaintiff(s) and the Proposed Class*

(additional Plaintiffs' counsel in signature block)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LEONNA BROWN, KATHERINE BURNETT, CHRIS GOLDEN, IRENE HARDIN, FIZA JAVID, JOJO JENKINS, KRYSTYNA MACHUTA, NICHOLAS MAHON, SAIRA MUELLER, and SHARVIA SULTANA, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FITNESS INTERNATIONAL, LLC, d/b/a LA FITNESS, ESPORTA

Case No.: 8:23-cv-2109

**CLASS ACTION COMPLAINT:**

1. Violations Of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*
2. Violations Of California False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL")
3. Breach of Contract

JURY TRIAL DEMANDED

FITNESS, and CITY SPORTS CLUB,

Defendant.

## **CLASS ACTION COMPLAINT**

1. Plaintiffs Leonna Brown, Katherine Burnett, Chris Golden, Irene Hardin, Fiza Javid, JoJo Jenkins, Krystyna Machuta, Nicholas Mahon, Saira Mueller, and Sharvia Sultana ("Plaintiff(s)"), individually and on behalf of all others similarly situated, bring this action against Defendant Fitness International, LLC, d/b/a LA Fitness, Esporta Fitness, and City Sports Club (hereinafter "LA Fitness" or "Defendant") to obtain damages, restitution, and injunctive relief from Defendant. Plaintiffs make the following allegations upon information and belief, except as to their own actions, the investigation of their counsel, and facts that are a matter of public record.

## **NATURE OF THE ACTION**

2. This is a class action on behalf of individuals who have acquired membership in a gym operated under the names of "LA FITNESS," "Esporta Fitness," or "City Sports Club," all owned, managed and controlled by LA Fitness, to recover damages and other relief arising from Defendant's violations of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL"); California False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"), and breach of contract.

3. Defendant has violated California state laws and breached the terms of its contract by engaging in deceptive and predatory cancellation policies to continuously gain a profit from consumers who no longer wish to utilize gym membership services. Defendant violated membership agreements by failing to abide by cancellation policies in their contracts. Defendant deceived new members by promoting "no hassle" cancellations in order to get them to sign up for gym memberships but failed to disclose the true nature of its cancellation policies. As a result, consumers were continuously charged membership fees after making good faith efforts to cancel their policies.

**PARTIES**

4. Plaintiff **Leonna Brown** ("Plaintiff Brown") is and at all times mentioned herein was an individual citizen of the Commonwealth of Pennsylvania. Plaintiff Brown was a member of LA Fitness from February 24, 2023, until the present. Plaintiff Brown has attempted to cancel her membership by phone and in-person on numerous occasions.

5. Plaintiff **Katherine Burnett** ("Plaintiff Burnett") is and at all times mentioned herein was an individual citizen of the State of Arkansas. Plaintiff Burnett was a member with LA Fitness from 2018 until she attempted to cancel her membership on April 19, 2019. Plaintiff Burnett incurred deductions from her bank account for membership fees every month until January of 2021.

6. Plaintiff **Chris Golden** ("Plaintiff Golden") is and at all times mentioned herein was an individual citizen of the State of California. Plaintiff Golden was a member of LA Fitness from early 2023 until late 2023 when Plaintiff Golden attempted to cancel his membership and was told it was canceled. Nevertheless, LA Fitness continued to withdraw membership fees from his bank.

7. Plaintiff **Irene Hardin** ("Plaintiff Hardin") is and at all times mentioned herein was an individual citizen of the State of Georgia. Plaintiff Hardin

was a member of LA Fitness from 2013 and attempted to cancel her LA Fitness membership but continued being charged. Plaintiff Hardin closed her bank account to stop LA Fitness from deducting funds from her bank account.

8. Plaintiff **Fiza Javid** ("Plaintiff Javid") is and at all times mentioned herein was an individual citizen of the State of Illinois. Plaintiff Javid was a member of LA Fitness from early 2022 until November 9, 2022. However, Ms. Javid was still being charged. Finally, on January 4, 2023, Plaintiff Javid changed her credit card number to stop the deductions by LA Fitness.

9. Plaintiff **Jojo Jenkins** ("Plaintiff Jenkins") is and at all times mentioned herein was an individual citizen of the State of Florida. Plaintiff Jenkins was a member of LA Fitness from April of 2022 until July 13, 2022, but continued to be charged membership fees. Finally, Plaintiff Jenkins called her bank and stopped all payments to LA Fitness.

10. Plaintiff **Krystyna Machuta** ("Plaintiff Machuta") is and at all times mentioned herein was an individual citizen of the State of Michigan. Plaintiff Machuta joined LA Fitness at the beginning of January 2023, but she decided and attempted to cancel her membership. However, from January of 2023 until March 8, 2023, LA Fitness continued to charge Plaintiff Machuta despite her efforts to cancel the membership in January 2023.

11. Plaintiff **Saira Mueller** ("Plaintiff Mueller") is and at all times mentioned herein was an individual citizen of the State of New York. Plaintiff Mueller was a member of LA Fitness from 2019 until she tried to cancel in 2020 but LA Fitness continued to bill her. Ultimately, Plaintiff Mueller contacted her bank to stop all payments from her account to LA Fitness.

12. Plaintiff **Sharvia Sultana** ("Plaintiff Sultana") is and at all times mentioned herein was an individual citizen of the State of New York. Plaintiff Sultana was a member of LA Fitness beginning in 2021. In April 2022, Plaintiff

Sultana attempted to cancel her membership but was billed each month until January 10, 2023, when she replaced her debit/credit card to stop LA Fitness deductions.

13. Plaintiff **Nicholas Mahon** ("Plaintiff Mahon") is and at all times mentioned herein was an individual citizen of the State of Texas. Plaintiff Mahon was a member of LA Fitness from June 6, 2018, until he began trying to cancel his membership in early July 2019. His cancellation was finally processed by LA Fitness in August of 2019.

14. Defendant **Fitness International, LLC** has its principal place of business located at 3161 Michelson Dr., Ste 600, Irvine, California 92612. It can be served through its registered agent C T Corporation System at 28 Liberty Street New York, New York 10005. Defendant Fitness International, LLC does business as LA Fitness, Esporta Fitness, and City Sports Club (hereinafter "LA Fitness" or "Defendant").

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant, including all plaintiffs other than Plaintiff Golden.

16. The Court has general personal jurisdiction over Defendant because, personally or through its agents, Defendant operates, conducts, engages in, or carries on a business or business venture in Irvine, California; it is registered with the Secretary of State in California as a limited liability corporation; it maintains its headquarters in California; and committed tortious acts in California.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because it is the district within which LA Fitness has the most significant contacts and LA Fitness's principal place of business is located in this District.

**APPLICABLE LAW**

18. Defendant is a citizen of California. Defendant Fitness International, LLC does business as LA Fitness, Esporta Fitness, and City Sports Club.

19. Upon information and belief, the contracts at issue in this matter were drafted, developed, and finalized in California.

20. Upon information and belief, some (if not all) of the contracts at issue in this matter include a "governing law" provision which indicates that the contracts "shall be governed and enforced in accordance with California law."

21. Upon information and belief, the contracts at issue in this matter must be cancelled in California when a Plaintiff and/or Class member mails in a cancellation form, which are sent to an address in Irvine, California.

22. As for the non-contract claims, Plaintiffs maintain that LA Fitness is a California corporation, established in California, and from California, it enforces a company-wide policy and/or procedure to prevent Plaintiffs and Class members from cancelling their memberships.

23. Upon information and belief, all contracts, online forms, and nationwide advertising decisions, and all company-wide employee and management training and policy decisions emanate from LA Fitness's headquarters located in the State of California.

24. Accordingly, Plaintiffs and Class members maintain that California law is the governing law for all causes of action.

## COMMON FACTUAL ALLEGATIONS

***Defendant's Business***

25. Defendant LA Fitness International, LLC, commonly known by the name "LA Fitness," is a North American gym chain. LA Fitness International, LLC also owns and operates Esporta Fitness and City Sports Clubs.

26. LA Fitness was founded in Southern California in 1984 and has expanded its locations across North America.[1] These locations include: Canada, Oregon, California, Arizona, Texas, Minnesota, Arkansas, Louisiana, Illinois, Indiana, Tennessee, Ohio, New York, Kentucky, Maryland, Pennsylvania, New Jersey, Massachusetts, Connecticut, Rhode Island, District of Columbia, Michigan, North Carolina, Georgia, and Florida.[2]

27. LA Fitness, Esporta Fitness, and City Sports Club offer a variety of memberships based on how much a gym member is willing to pay.

28. Individuals are able to join LA Fitness while at a gym by signing a membership contract in person or are able to join online after selecting a membership plan. Members must rely upon information given to them in person by LA Fitness personnel or, alternatively, must rely on information provided on the publicly accessible pages of the website before signing up online.

---

[1] https://www.lafitness.com/Pages/about.aspx
[2] https://www.lafitness.com/Pages/findClub.aspx

29. Upon information and belief, LA Fitness personnel fail to provide a physical copy of the agreement to review the terms of the contract before members, including Plaintiffs, sign up for a membership. Similarly, if a member chooses to sign up for a membership online, they are unable to see the full terms of the contract before signing. *See* online form below:

Select Additional Features

$39.99 Monthly Rate 12 Month Term Signature

$49.99 Monthly Rate 12 Month Term Signature

| | |
|---|---|
| Number of Persons[1] | 1 for $39.99/month |
| Initiation Fee: | $99.00 |
| Billing Frequency: | Monthly |
| Initial Term: | 12 |
| Prepayment: | N/A |

Optional amenities can be selected in the next step.

Included Amenities

- Racquetball/Squash Courts: Included
- 1 guest per visit: Included
- Group Fitness: Included
- Cycle Class: Included
- Pool/Whirlpool Spa: Included
- Esporta Brand Access: Included
- City Sports Brand Access: Included
- LA Fitness Brand Access: Included

Your Dues[2]

| | |
|---|---|
| First Month Dues[3]: | $39.99 |
| Last Month Dues[3]: | $39.99 |

Your Home Club

BEAR
900 EDEN CIRCLE,
BEAR, DE 19701
Phone: (302) 440-1378

Club Access
Signature
Online - Easy Start - Term

Group Fitness Classes
Group Fitness classes throughout the day, many at no additional charge.

1/ Other membership options may be available by visiting your local club.
2/ If you cancel during your initial term, a cancellation fee will apply. Your membership will be for an initial term of 12 months. Thereafter it will continue on a monthly basis until cancelled in accordance with the terms of your Membership Agreement.
3/ Total monthly dues = Monthly dues + Amenities.
4/ Total initial payment = Initiation fee + First/last dues + Applicable taxes (if any).
5/ The indicated Annual fee, per person, will be billed 14 days after enrollment, and every year thereafter. If your club is in pre-sale, the Annual fee will be billed 14 days after the club opens, and every year thereafter.

***There is an additional charge for certain amenities, such as Racquetball, Kids Klub & Personal Training.**
***Amenities may not be available at all locations.**
***Must pay first & last month's dues plus initiation fee (if applicable) plus applicable tax to join. Membership will automatically renew on a monthly basis after the initial term and may be canceled in accordance with the terms of the membership agreement; a termination fee may apply.**
**Offer based on the purchase of a new membership listed above per person.**
**Dues must be paid by electronic funds transfer (EFT) from a checking, savings, Visa, MasterCard,**

1 Select a Club to Join | 2 Select a Membership Plan | 3 Provide Membership & Payment Information | 4 Review & Confirm Membership

Member Information

*First Name:

*Last Name:

*Cell Phone Number:

*Email Address:

*Confirm Email Address:

*Address:

*City:

* State: IN

* Zip Code:

Add Amenities

- Towels: $5.00
- LES MILLS+. Each member is charged separately per amenity.: $5.00

Initial Payment Amount

A onetime fee will be charged to your account. This charge will include the initiation fee (if applicable), first and last dues (if applicable, which includes applicable amenities) and taxes (if any).

| | |
|---|---|
| Recurring Dues | $39.99 |
| Annual Fee Per Person[5] | $49.00 |
| Initiation Fee | $99.00 |
| Prepaid Dues - first Month (& Last) - if applicable | $79.98 |
| Tax for Initiation and Prepaid Dues (0.00%) | $0.00 |
| **Total Amount Due Today:** | **$178.98** |

Included Amenities:

Racquetball/Squash Courts: Included
1 guest per visit: Included
Group Fitness: Included
Cycle Class: Included
Pool/Whirlpool Spa: Included
Esporta Brand Access: Included
City Sports Brand Access: Included
LA Fitness Brand Access: Included

30. The contract provides that membership may be cancelled by sending notification to LA Fitness's corporate office in Irvine, California.

31. Despite this provision, LA Fitness personnel routinely tell Plaintiffs and Class members that if they choose to cancel their membership, they are able to cancel at any time without any hassle. Specifically, prospective gym members who inquired about cancellation were informed by LA Fitness personnel that the only requirement to cancel the membership was to verbally notify the gym, and they would be able to get out of the LA Fitness membership contract at any time.

32. Nonetheless, the fine print of LA Fitness's membership contract requires members to mail a notice letter to the corporate office in Irvine, California, in order to cancel a membership. All the Plaintiffs were unaware of this written notice requirement to end their membership despite discussions and representations from LA Fitness gym employees at the time of entering into the membership agreement, and even after notifying LA Fitness gym employees when they were actively trying to cancel memberships. *See* contract provision below:

**day every Billing Period or as soon thereafter as practical, until cancelled in the manner provided below.**
**HOW TO CANCEL YOUR DUES MEMBERSHIP:** You may cancel your Membership and the continued billing of Dues via EFT or CC by mailing written notice of your cancellation request to: LA Fitness, P.O. Box 54170, Irvine, CA 92619-4170. A cancellation notice postmarked at least 5 business days before your next billing date should result in no further Dues billing. A cancellation notice postmarked less than 5 business days before your next billing date may result in one more Dues billing. In either case, if such an additional billing occurs, LA Fitness will refund that billing. Your prepaid last Billing Period Dues will be applied to the Billing Period following the final Billing Period paid for by your recurring EFT or CC Dues billings, and your Membership will expire at the end of that prepaid last Billing Period. **Until your Membership expires, you will have continued club access: PIF Memberships may not be cancelled in this manner.**

33. Specifically, after Plaintiffs and Class members notified LA Fitness personnel that they intended to cancel their memberships, LA Fitness repeatedly instructed Plaintiffs and Class members to come into the gym during certain business hours while a manager was present to cancel their membership. Yet following these instructions from LA Fitness personnel, Plaintiffs and Class members were still unable to cancel their memberships.

34. Additionally, some members like Plaintiff Sultana were informed they could cancel their membership through the online platform, which turned out to be false.

35. Plaintiffs and class members, like Plaintiff Javid, who tried to cancel by mailing a notice letter to the company fared no better. LA Fitness routinely delayed cancellation of memberships even when notified by mail.

36. Ultimately, many Plaintiffs and Class members had no other option but to cancel their debit and credit cards or bank accounts linked to the LA Fitness accounts in order stop incurring membership fee charges from LA Fitness.

37. LA Fitness's difficult and inconsistent requirements to cancel a membership agreement are contrary to the terms of the membership agreement, including, but not limited to: requiring cancellation in-person, requiring cancellation at certain times of the day, and requiring cancellation in the presence of a manager.

38. Members, including certain Plaintiffs, have reported that even after successfully going through the cancellation obstacles, and being told their membership is cancelled, they were still billed for months.

39. When LA Fitness employees sign members up in-person for gym services, they fail to provide a physical copy for members to review prior to enrollment. In addition, LA Fitness employees regularly inform members to disregard policies stated on the membership agreement. LA Fitness employees quickly get e-signatures proving little to no time for the enrolling member to review the electronic version of the agreement. In fact, LA Fitness personnel tell new members that "they can cancel at any time with no other obligations," in effect, coercing members into being locked into an agreement that they are unable to cancel without a fight.[3]

---

[3] *See* https://www.bbb.org/us/ca/irvine/profile/health-club/la-fitness-1126-41156/complaints

40. LA Fitness and its sister entities provide willfully false or misleading information to consumers to get people to sign up for memberships and to falsely assuage all concerns about cancellation issues. When consumers decide to cancel a membership, regardless of the reason, they are blindsided by the predatory nature of cancellation tasks. LA Fitness has concocted a wide range of difficult hurdles for members to complete for cancellation, effectively trapping members in costly and unwanted memberships.

41. Therefore, Plaintiffs and other members who have tried to cancel an LA Fitness membership have suffered monetary losses, time spent trying to resolve the matter, and anxiety.

## PLAINTIFFS' EXPERIENCES

**Plaintiff Leonna Brown**

42. Pennsylvania Plaintiff Leonna Brown has been a member of the LA Fitness in Glenside, Pennsylvania beginning on February 24, 2021, until the present.

43. Since joining LA Fitness, Ms. Brown has paid approximately $100 per month on her membership.

44. At the time that Ms. Brown entered the membership agreement, and based upon information as explained to her by LA Fitness personnel, Ms. Brown understood that she would be able to cancel her membership at any time without any limitations.

45. However, over the course of the last several months, Ms. Brown has attempted to cancel her membership on multiple occasions over the phone and in-person and was explained by LA Fitness personal that she had to come to the gym during certain business hours with a manager present to cancel her membership.

46. To date, Ms. Brown still continues to have her membership fees deducted from her bank account although she has tried to cancel her membership several times to no avail.

**Plaintiff Katherine Burnett**

47. Arkansas Plaintiff Katherine Burnett became an LA Fitness member in or around the year 2018 at the Little Rock, Arkansas location.

48. Since the inception of her membership, Ms. Burnett had been paying around $50.00 per month for her monthly membership fees. The monthly price she was paying increased by approximately $10.00-15.00 per month during her time as a member.

49. In addition to her monthly membership fees, she was charged a yearly fee that was over $100.00 per year. Upon information and belief, LA Fitness failed to inform her about a recurring annual membership fee. The hidden yearly fees came as a shock to Plaintiff Burnett because LA Fitness employees represented that there were no additional fees to what was described to her as a "no-contract" monthly membership.

50. Upon entering her membership agreement, based upon information explained to her by LA Fitness personnel, Ms. Burnett was told that she would be able to cancel her membership at any time without any limitations and that it would be a simple process.

51. LA Fitness personnel explained her "no-contract" membership meant that she could start a membership and end it with ease at any time without any additional requirements for cancelation.

52. On or about April 19, 2019, Ms. Burnett attempted to cancel her LA Fitness membership over the phone and was told by LA Fitness personnel that she was required to come into the gym during certain business hours with a manager present to cancel her membership.

53. After going to the gym during certain business hours when a manager present, Ms. Burnett was instructed that her membership was cancelled. However, Ms. Burnett continued to be charged for her gym membership.

54. Plaintiff Burnett was charged a large yearly membership fee after canceling. In response, Ms. Burnett called her bank, made a complaint with the Better Business Bureau, attempted to contact LA Fitness about the reoccurring charges, and eventually had to get a new bank card so LA Fitness could not access her financial accounts.

55. On or around January 13, 2021, Plaintiff Burnett stopped being charged for the LA Fitness membership that she attempted to cancel over a year and a half before.

56. Upon information and belief, Plaintiff Burnett was not provided a copy of her membership contract and the other cancelation policies forced upon her were not provided in the small print within the contract.

**Plaintiff Chris Golden**

57. California Plaintiff Chris Golden obtained an LA Fitness membership on two separate occasions, once in 2014 and again in 2023 at the Irvine, California location.

58. Since the inception of both of his memberships, Mr. Golden was paying around $50.00 per month for his membership.

59. Upon entering his membership agreement both times, Mr. Golden was under the impression based upon information explained to him by LA Fitness personnel, that he would be able to cancel his membership with ease at any time without any limitations and that he would just need to notify the gym.

60. On or around April 5, 2017, Mr. Golden attempted to cancel his first LA Fitness membership over the phone and was told by LA Fitness personnel initially that it was canceled. Despite this, LA Fitness continued to withdraw

membership fees, and Mr. Golden subsequently followed up with a call. LA Fitness personnel then said he was required to come into the gym in order to cancel his membership during certain business hours with a manager present. Mr. Golden tried to come into the gym on several occasions, but a manager was not available during his repeated attempts at in-person cancellation.

61. In addition to making several trips to the gym to attempt to cancel his membership, Mr. Golden also made many calls and sent emails to get assistance with canceling his membership. He never received any feedback or response.

62. Around September 13, 2017, Mr. Golden believes the deductions finally stopped.

63. Again in 2023, after Mr. Golden joined LA Fitness a second time, Mr. Golden experienced a nearly identical situation when attempting to cancel despite being promised by LA Fitness personnel that it would be easy to cancel the membership with no penalties and that it would be a quick cancellation process.

64. After attempting to cancel his 2023 membership, Mr. Golden was required to follow the same rules as before in 2017 and get a manager's permission to cancel.

65. Plaintiff Golden has reported these actions by LA Fitness to agencies like the BBB as an attempt to prevent this behavior from continuing.

66. Upon information and belief, Plaintiff Golden was not provided a copy of his membership contract and the other cancelation policies forced upon him were not provided in the small print within the contract.

**Plaintiff Irene Hardin**

67. Georgia Plaintiff Irene Hardin became an LA Fitness member in or around the year 2013 at the Sandy Springs, Georgia location.

68. Since the inception of her membership, Ms. Hardin has been paying around $35.00 to $40.00 per month for her membership.

69. Upon entering her membership agreement, based upon information explained to her by LA Fitness personnel, Ms. Hardin was under the impression that she would be able to cancel her membership at any time without any limitations and that it would be a simple process. Ms. Hardin was informed that she should not have any worries about cancelation.

70. Sometime after opening a membership, Ms. Hardin attempted to cancel her LA Fitness membership over the phone and was told by LA Fitness personnel that she was required to come into the gym in order to cancel her membership during certain business hours with a manager present.

71. Ms. Hardin was shocked at these requirements as she was not informed about them when she signed up for a gym membership. Moreover, she was not given a contract to review when signing the agreement. Upon information and belief, these odd requirements were not included in the small font printed contract.

72. Ms. Hardin attempted to follow the newly learned requirements for cancellation but was still unsuccessful in canceling her membership. More specifically, every time Ms. Hardin showed up in-person to cancel her membership, there was never a manager present.

73. Additionally, LA Fitness did not return any of Ms. Hardin's phone calls that she made to resolve the matter, and continually charged her for four to five months after she made it clear to LA Fitness that she wanted to cancel.

74. Ms. Hardin was forced to close her bank account and open up a new one to stop the deductions to her bank account that LA Fitness was charging.

75. Upon information and belief, Plaintiff Hardin was not provided a copy of her membership contract and the other cancelation policies forced upon her were not provided in the small print within the contract.

**Plaintiff Fiza Javid**

76. Illinois Plaintiff Fiza Javid became an LA Fitness member in or around the year 2022 at the Lawrence, Illinois location.

77. Since the inception of her membership, Ms. Javid has been paying around $40.00 per month for her membership.

78. Upon entering her membership agreement, based upon information explained to her by LA Fitness personnel, Ms. Javid was under the impression that she would be able to cancel her membership at any time without any limitations and that it would be a simple process.

79. On or around November 9, 2022, Ms. Javid attempted to cancel her LA Fitness membership online; however, she was unable to do so. Accordingly, Ms. Javid printed out a "closing form" as indicated by LA Fitness personnel and mailed it to the company.

80. After canceling her gym membership pursuant to the direction of LA Fitness personnel, Ms. Javid was still being charged for her membership that she believed was canceled. LA fitness continued to bill her even after confirming with her that her membership was canceled.

81. Plaintiff Javid was still receiving bank deductions from LA Fitness after canceling, so she called LA Fitness and received assurance it would cancel her membership and stop the deductions.

82. Despite this, the deductions were still occurring, so Plaintiff Javid reprinted the "closing form" and mailed a second closing form to the company to cancel her membership.

83. On January 4, 2023, Ms. Javid had to change credit cards in order to stop the deductions from LA Fitness.

84. Upon information and belief, Plaintiff Javid was not provided a copy of her membership contract and the other cancelation policies forced upon her were not provided in the small print within the contract.

**Plaintiff JoJo Jenkins**

85. Texas Plaintiff JoJo Jenkins became an LA Fitness member on or around April of 2022 at the Plantation, Florida location.

86. Since the inception of her membership, Ms. Jenkins was paying approximately $48.14 per month for her membership.

87. Upon entering her membership agreement, based upon information explained to her by LA Fitness personnel, Ms. Jenkins was told that she would be able to cancel her membership at any time without any limitations and that it would be a simple process.

88. On or around July 13, 2022, Ms. Jenkins attempted to cancel her LA Fitness membership over the phone and was told by LA Fitness personnel that she was required to come into the gym in order to cancel her membership during certain business hours with a manager present.

89. Shortly thereafter, Ms. Jenkins went to the LA Fitness gym to attempt to cancel her membership in person, during the requisite business hours, yet still, she still was unable to cancel her membership.

90. Instead, the LA Fitness personnel told Ms. Jenkins she was required to mail in a form to cancel her membership.

91. For several months after, Ms. Jenkins was continuing to be charged her membership fee for a gym membership she no longer wanted. Accordingly, Ms. Jenkins called her bank to stop the charges with LA Fitness.

92. Upon information and belief, the other cancelation policies forced upon her were not provided in the small print within the membership contract.

**Plaintiff Krystyna Machuta**

93. Michigan Plaintiff Krystyna Machuta became an LA Fitness member in or around January 2023 at the Shelby Township, Michigan location.

94. Since the inception of her membership, Ms. Machuta had been paying around $30.00 per month for her membership.

95. Upon entering her membership agreement, based upon information explained to her by LA Fitness personnel, Ms. Machuta was under the impression that she would be able to cancel her membership with ease at any time without any limitations and that she would just need to notify the gym.

96. Plaintiff Machuta recalls LA Fitness advertising "it's easy to join and easy to cancel."

97. On or around January 3, 2023, Ms. Machuta attempted to cancel her LA Fitness membership by sending a letter that she wanted to cancel her membership, because she was unable to make any changes to her LA Fitness profile otherwise.

98. After her attempt to cancel her membership, LA Fitness attempted to charge her an annual enrollment fee of $49.00. LA Fitness called her multiple times proceeding this letter to pay the annual enrollment fee.

99. Plaintiff Machuta felt harassed by LA Fitness through multiple phone calls made by their personnel after attempting to cancel. She contacted the LA Fitness headquarters to get her membership canceled, since her initial attempt was not successful.

100. On or about March 8, 2023, Plaintiff Machuta believes the membership deductions finally stopped.

101. Upon information and belief, Plaintiff Machuta was not provided a copy of her membership contract and the other cancelation policies forced upon her were not provided in the small print within the contract.

**Plaintiff Nicholas Mahon**

102. Texas Plaintiff Nicholas Mahon became an LA Fitness member on or around June 6, 2018, at the Spring, Texas location.

103. Since the inception of his membership, Mr. Mahon was paying approximately $64.00 per month for his membership.

104. Upon entering his membership agreement, Mr. Mahon was assured by LA Fitness personnel that he would be able to cancel his membership at any time without any limitations.

105. Before July 8, 2019, Mr. Mahon attempted to cancel his LA Fitness membership over the phone and in-person at the gym but was informed by LA Fitness personnel that he was unable to cancel his membership over the phone or in-person, but instead was required to submit a cancellation form online or through the mail to cancel his membership.

106. Thereafter, in early July of 2019, Mr. Mahon submitted a cancellation form online, which was processed by LA Fitness in August of 2019.

107. Upon information and belief, Mr. Mahon was not provided a copy of his membership contract and the requirements to cancel that were forced upon him were not in the small print of the contract.

**Plaintiff Saira Mueller**

108. New York Plaintiff Saira Mueller became an LA Fitness member in or around the year 2019 at LA Fitness's Culver City, California location.

109. Since the inception of her membership, Ms. Mueller had been paying around $280.00 periodically for her personal training sessions as a part of her membership.

110. Upon entering her membership agreement, based upon information explained to her by LA Fitness personnel, Ms. Mueller understood that she would

be able to cancel her membership at any time without any limitations and that she would just need to notify the gym.

111. On or around the beginning of 2020, Ms. Mueller attempted to cancel her LA Fitness membership over the phone and was told by LA Fitness personnel that her account was canceled. However, LA Fitness continued to bill her and would not return her phone calls. She attempted to email the company, but her emails were bounced back. Ultimately, Ms. Mueller contacted her bank to bar the charges from LA Fitness.

112. After canceling her gym membership as required by LA Fitness, Ms. Mueller was still incurring charges for her membership that she believed was canceled. LA fitness continued to bill her even after it confirmed with her that her membership was canceled.

113. Upon information and belief, the other cancelation policies forced upon her were not provided in the small print within the contract.

**Plaintiff Sharvia Sultana**

114. New York Plaintiff Sharvia Sultana became an LA Fitness member in or around the year 2021 at LA Fitness's Queens, New York location.

115. Since the inception of her membership, Ms. Sultana had been paying around $50.00 per month as part of her membership agreement.

116. Upon entering her membership agreement, based upon information explained to her by LA Fitness personnel, Ms. Mueller understood that she would be able to cancel her membership at any time without any limitations and that she would just need to notify the gym through the website, email, or over the phone.

117. On or around the beginning of April of 2022, Ms. Sultana attempted to cancel her LA Fitness membership through the LA Fitness website and emailed the company over 10 times about cancelation. However, LA Fitness continued to bill her and would not respond to her contact attempts via email.

118. Ms. Sultana called the company, and LA Fitness personnel informed her that she would need to come-in person during certain hours while a manager was present or mail in a form which she did not have the ability to do at the time.

119. Ms. Sultana was unable to come-in person during the required hours while a manager was present and attempted cancellation through other avenues, as she was made to believe was possible at the time she signed up for a membership. All cancellations attempts were unsuccessful, and Ms. Sultana was continuously billed for her membership until January 10, 2023 when she was forced to cancel and replace her debit/credit card to stop the deductions.

120. Upon information and belief, Plaintiff Sultana was not provided a copy of her membership contract and the other cancellation policies forced upon her were not provided in the small print within the contract.

## COMMON CLASS MEMBER INJURIES AND DAMAGES

121. To date, Defendant has failed to reimburse Plaintiffs and Class Members for overcharges on their memberships, and to compensate them for their injuries sustained by its unfair cancellation practices. Defendant completely downplays and disavows its retention of Plaintiffs' and Class Members' membership fees, when the facts demonstrate that its practices are common, intentional, uniformly applied, and unlawful.

122. Plaintiffs and Class Members have been injured and damaged by Defendant's failure to honor the terms of its contract, its failure to cancel memberships when requested, and its addition to its retention of unearned membership fees after a Plaintiff or Class member has no longer authorized automatic deductions from bank accounts and credit/debit cards.

123. Plaintiffs and Class Members faced out-of-pocket losses of money and lost time due to Defendant's unlawful practices.

124. Plaintiffs and Class Members spent and will continue to spend significant amounts of time cancelling their memberships, attempting to meet unreasonable requirements that are not in the parties' agreements nor required by law.

125. Plaintiffs and Class Members have spent many hours attempting to end their memberships and when unsuccessful, stop payments to Defendant through their financial and banking associates, as well as informing the Better Business Bureau of Defendant's unlawful practices.

126. Plaintiffs and Class Members suffered actual injury as a direct result of the Defendant's practices. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of Defendant's misrepresentations, and fraudulent practices.

127. Further, as a result of Defendant's conduct, Plaintiffs and Class Members have suffered anxiety from Defendant's continuation of charging membership fees after Plaintiffs and Class Members have attempted to (or actually) cancelled their memberships.

128. Defendant was unjustly enriched by its unlawful and fraudulent cancellation policies.

129. As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and Class Members have suffered common injuries and damages.

## CLASS ACTION ALLEGATIONS

130. Plaintiffs seek certification of a Nationwide Class for the fullest period allowed by law (the "Relevant Time Period").

131. Plaintiffs seek certification of the **Nationwide Class** defined as follows:

> All persons in the United States who purchased an LA Fitness gym membership, then cancelled their membership and incurred post-cancellation membership fees within the Relevant Time Period.

132. Plaintiffs reserve the right to modify or refine the definition of the Class based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

133. Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes themselves from the Class in accordance with Court-approved procedures.

134. **Numerosity (Rule 23(a)(1)).** The Class Members are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Class, as herein identified and described, are not known, but upon information and belief, the Defendant sold its memberships to hundreds or thousands of individuals.

135. **Commonality (Rule 23 (a)(2) and 23(b)(3)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members, including the following but are not limited to:

a. whether Defendant sold memberships that had deceptive and predatory cancellation policies;

b. whether Defendant advertised, represented, or held itself out as producing memberships that were hassle free and easy to cancel;

c. whether Defendant misrepresented the membership policies;

d. whether Defendant intended for Plaintiffs, the Class members, and others to purchase the memberships;

e. whether Defendant intended or foresaw that Plaintiffs, the Class members, and others would not be able to cancel their membership without difficulties;

f. whether Defendant has a policy or practice in deceiving Plaintiffs and the Class members such that prevented them from effectively cancelling their memberships;

g. whether the Plaintiffs and Class members suffered direct losses or damages;

h. whether the Plaintiffs and Class members suffered indirect losses or damages;

i. whether the Plaintiffs and Class members are entitled to actual or other forms of damages and other monetary relief; and

j. whether the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

136. Defendant engaged in a common course of conduct in contravention of the laws Plaintiffs seek to enforce individually and on behalf of the Class members. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers that will substantially advance the resolution of the case.

137. **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the other members of the proposed Class. Plaintiffs and members of the Class (as applicable) suffered injuries as a result of Defendant's wrongful conduct that is uniform across the Class.

138. **Adequacy (Rule 23(a)(4))**. Plaintiffs' interests are aligned with the Class they seek to represent. Plaintiffs have and will continue to fairly and adequately represent and protect the interest of the Class. Plaintiffs have retained competent counsel highly experienced in complex litigation and class actions and the types of claims at issue in this litigation, with the necessary resources committed to protecting the interest of the Class. Plaintiffs have no interest that is antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class.

139. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**. Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all Members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

140. **Superiority - Federal Rule of Civil Procedure 23(b)(3**). The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following: the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

141. Further, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far

fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

142. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant.

143. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

144. **Manageability**. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

145. Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

146. **Notice**. Plaintiffs and their counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW

## Cal. Bus. & Prof. Code §§ 17200, *et seq.*

(By All Plaintiffs on behalf of Class)

147. Plaintiffs, individually and on behalf of the Class, bring this claim and adopt and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

148. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

149. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein constitute business acts and practices.

150. Unlawful: The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a. The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and

b. The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.

151. Unfair: The following acts herein are "unfair" under the UCL:

a. Defendants' conduct with respect to the labeling, advertising, and sale of the Memberships was "unfair" because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

b. Defendants' conduct with respect to the labeling, advertising, and sale of the Memberships was and is also unfair because it

violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the Consumers Legal Remedies Act and the False Advertising Law.

c. Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

152. Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

153. As set forth herein, Defendant's claims that its memberships were hassle-free and easy to cancel by simply informing an employee of the consumer's intent to cancel was likely to mislead or deceive the public.

154. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

155. Plaintiffs and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

156. Defendant's conduct caused and continues to cause substantial injury to Plaintiffs and Class members. Plaintiffs and Class members have suffered injury in fact as a result of Defendant's unlawful conduct.

157. In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair,

and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

158. Plaintiffs and Class members also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

**COUNT II**

**VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW**

**Cal. Bus. & Prof. Code § 17500 ("FAL")**

(By All Plaintiffs on behalf of Class)

159. Plaintiffs, individually and on behalf of the Class, bring this claim and adopt and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

160. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

161. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Id.

162. As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the gym memberships misled consumers acting reasonably as to Defendant's representations about the ease of cancellation to coax consumers into trying out a membership, as stated above.

163. Plaintiffs suffered injury in fact as a result of Defendant's actions as set forth herein because they purchased the memberships in reliance on Defendant's false and misleading labeling claims concerning the memberships, as stated above.

164. Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised gym memberships in a manner that is untrue and misleading, which Defendants knew or reasonably should have known, and omitted material information from their advertising.

165. Defendant profited from the sale of the falsely and deceptively advertised Memberships to unwary consumers.

166. As a result, Plaintiffs, Class members, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

167. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiffs, on behalf of members of the Class, seek an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint

**COUNT III**

**BREACH OF CONTRACT**

(By All Plaintiffs on behalf of Class)

168. Plaintiffs, individually and on behalf of the Class, bring this claim and adopt and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

169. Defendant has engaged in a widespread policy, practice, and procedure of breaching its contracts with Plaintiffs and Class members by not permitting them to cancel their memberships pursuant to the membership contracts.

170. Plaintiffs and the Class members entered into contracts with Defendant which allowed Plaintiffs and the Class members to cancel their memberships at any time but were then prohibited from canceling their memberships as set forth in the contracts. *See* Saira Mueller Contract, attached hereto as Exhibit 1. *See also* Chris Golden Contract, attached hereto as Exhibit 2.

171. Upon information and belief, hundreds, if not thousands, of other membership holders across the country are being prohibited from canceling their memberships as set forth in the contracts.

172. Defendant's prohibition of Plaintiffs and Class members from canceling their memberships except with new conditions which were not incorporated into the 4-corners of the contract is in effect a modification of the contract that is not agreed upon by the parties, and therefore is in violation of their actual contracts.

173. When Defendant ignored requests for cancellation as provided in its contracts, it continued to bill monies to Plaintiffs and Class members as if the memberships were never cancelled.

174. Defendant required Plaintiffs and Class members to: 1) come to a gym location in person, 2) during certain hours, and 3) while a manager was present in order to attempt cancellation. These three requirements were not included in the contracts signed by members.

175. These requirements were widespread and difficult for Plaintiffs and Class members to complete as all three requirements had to be met. Thus, purposefully making it difficult for membership agreements to end due to needing manager approval, in person.

176. Additionally, Plaintiffs and Class members did not agree to be charged bi-annual or annual fees within the 4-corners of the written contracts.

177. Defendant ignored the terms of its contracts and continued to bill monies to Plaintiffs and Class members for these hidden fees, which were never agreed upon by Plaintiffs or Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and those similarly situated request that this Honorable Court:

A. Issue an Order certifying a Class of LA Fitness as defined herein pursuant to Rule 23;

B. Designate Plaintiffs as representatives on behalf of all similarly situated persons (Class members) who were LA Fitness members who: 1) were unable to cancel their memberships after they followed instructions provided by LA Fitness personnel; 2) were still charged monthly membership fees after they mailed in a cancellation form pursuant to the contract; and/or 3) were charged annual or bi-annual membership fees;

C. Issue an Order appointing the undersigned counsel as class counsel pursuant to Rule 23(g);

D. Award Plaintiffs and Class Members all membership fees that were incorrectly withdrawn by LA Fitness after Plaintiffs attempted to cancel by mailing in a cancellation form, as set forth herein;

E. Award Plaintiffs and Class Members all membership fees that were incorrectly withdrawn by LA Fitness after Plaintiffs attempted to cancel pursuant to instructions provided by LA Fitness personnel;

F. Provide lost time and other out-of-pocket expense compensation for all Plaintiffs and Class Members who were required to perform tasks outside of their contracts in their effort to cancel a membership;

G. Award Plaintiffs and Class Members a refund of all annual or bi-annual fees that were incorrectly withdrawn by LA Fitness;

H. Award Plaintiffs and all those similarly situated, further legal, statutory, equitable, and injunctive relief as this Court deems appropriate;

I. Award Plaintiffs and all those similarly situated pre and post judgment interest at the statutory rate as provided under California law;

J. Award Plaintiffs and all those similarly situated, attorneys' fees, costs and disbursements pursuant to California law;

K. Award service payments to Plaintiffs;

L. Award pre and post judgment payment and interest; and

M. Other relief as justice so demands.

**<u>TRIAL BY JURY IS DEMANDED</u>**

DATED: November 9, 2023

Respectfully submitted,

By: /s/ Jill J. Parker

Jill J. Parker (Cal. State Bar No. 274230)
jill@parkerminne.com
**PARKER & MINNE, LLP**

700 S. Flower Street, Suite 1000
Los Angeles, California 90017
Tel.: (310) 882-6833 Fax: (310) 889-0822

Danielle L. Perry (SBN 292120)
**Mason LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290
Email: dperry@masonllp.com

**ROBERT PEIRCE & ASSOC., P.C.**
D. Aaron Rihn, Esquire*
arihn@peircelaw.com
Sara J. Watkins, Esquire*
swatkins@peircelaw.com
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Tel. (412) 281-7229

*Counsel for Plaintiffs and Proposed Class*

**motion for pro hac vice forthcoming*